Andrew T. Solomon
Natalie S. Lederman
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, NY 10019
(212) 660-3000

*Attorneys for Defendants Altobridge Limited
and Altobridge Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALTO LENDING, LLC,

                Plaintiff,

        -against-

ALTOBRIDGE LIMITED, ALTOBRIDGE
CORPORATION and INTEL CORPORATION,

                Defendants.
------------------------------------------------------------x

Case No.: 1:12-cv-07391-ALC

**DECLARATION OF
MICHAEL FITZGERALD**

I, Michael Fitzgerald, hereby declare and state as follows:

1. I am the Chief Executive Officer of Altobridge Limited, a foreign corporation with its principal place of business in Kerry, Ireland. I also serve in the capacity of Chief Executive Officer and Director of Altobridge Corporation, a Delaware subsidiary of Altobridge Limited located in California. I submit this declaration in support of the motion to dismiss filed by defendants Altobridge Limited and Altobridge Corporation (together, "Altobridge").

2. I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently thereto.

3. Attached hereto as Exhibit A is a true and correct copy of a July 7, 2011 term sheet between Altobridge Limited and SGI Cambium, LLC.

4.  Attached hereto as Exhibit B is a true and correct copy of an October 18, 2011 term sheet between Altobridge Limited and SGI Cambium, LLC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 21, 2013.

/s/ Michael Fitzgerald
Michael Fitzgerald

**EXHIBIT A**



**SGI CAMBIUM**

## Proposed Investment in Altobridge Government Solutions

*This term sheet is non-binding unless and until a final definitive agreement has been executed. This document and the terms outlined herein are to be considered confidential*

### Term Sheet

| | |
|---|---|
| **Parties:** | Altobridge Limited ("Limited") and SGI Cambium |
| **Target:** | Altobridge Government Solutions ("AGS"), a Delaware corporation, or, if mutually agreed by the Parties, a new entity to be incorporated solely for the purpose of assuming and developing the business of selling telecommunications solutions and equipment based on its own intellectual property ("IP") as well as IP owned by Limited, to military and government entities throughout the world. |
| **Transaction:** | SGI Cambium, through a new entity to be created solely for this purpose ("Newco") will acquire 70% of the fully diluted capital of AGS for a total price of $2.1 million payable as follows:<br><br>- $450,000 to be paid in cash at Closing; and<br>- $1,650,000 in the form of a Seller Note |
| **Seller Note:** | The terms and conditions of the Seller Note will be as follows: |

| | | |
|---|---|---|
| | - Term: | 3 years |
| | - Interest: | 6% annually accruing to maturity or redemption. Starting in month 13 after Closing and in the event that AGS is meeting or exceeding its cumulative EBITDA as reflected in the Business Plan, interest will be paid in cash for any given quarter in which the cumulative EBITDA remains at or above the Business Plan. |
| | - Term Extension: | In the event that the cumulative EBITDA of AGS from Closing to the month prior to maturity of the Seller Note is less than 80% of that reflected in the Business Plan, the maturity of the Seller Note will be automatically extended for an additional 24 months. |

SGI Cambium, LLC
595 Madison Avenue, New York, NY 10022
Telephone: 212-582-4210 – Facsimile: 212-262-1031

June 8, 2011<br>Page 2 of 5

|  |  |
|---|---|
| – Default: | In the event that the Financing Line is withdrawn or not available to AGS |
| – Forcible Redemption: | Limited will have the right, but not the obligation, to force the early redemption of the Seller Note under the following circumstances:<br>i) in the event of a capital raise by AGS at an equity valuation in excess of $10 million; and<br>ii) at any time starting on the 18th month post Closing, in the event that the cumulative EBITDA of AGS from Closing to such date exceeds the cumulative EBITDA indicated in the Business Plan by more than 20%. In this case, if Limited exercises its Forcible Redemption right, AGS shall have the right, but not the obligation, to buy-back up to 50% of Limited's shares in AGS at the initial valuation. |

**Security:** The Seller Note will be secured with 100% of the shares in AGS acquired by Newco.

**Financing:** At Closing Newco will provide to AGS a Financing Line of up to $1.5 million callable on demand to meet the company's obligations as per the Business Plan. The initial drawdown at Closing will be for an amount of $0.4 million. The terms and conditions of the Financing Line will be as follows:

|  |  |
|---|---|
| – Term: | 3 years |
| – Limit: | $1.5 million fully committed at Closing |
| – Initial Drawdown: | $0.4 million |
| – Additional Drawdowns: | In amounts of no less than $100,000 by giving no less than 30 days advanced notice |
| – Interest: | 6% annually accruing to maturity or redemption. Starting in month 13 after Closing and in the event that AGS is meeting or exceeding its cumulative EBITDA as reflected in the Business Plan, interest will be paid in cash for any given |

SGI Cambium, LLC<br>595 Madison Avenue, New York, NY 10022<br>Telephone: 212-582-4210 – Facsimile: 212-262-1031

June 8, 2011
Page 3 of 5

|  |  |
|---|---|
|  | quarter in which the cumulative EBITDA remains at or above the Business Plan. |
| – Default: | In the event that at any time after the first 18 months, the cumulative EBITDA of AGS is less than 70% of the Business Plan, Newco will have the right to deny any further drawdowns until the cumulative EBITDA reaches at least 100% of the Business Plan |
| **Additional Financing:** | In the event that AGS fails to substantially meet the Business Plan and this causes the Financing Line to be fully utilized, Altobridge will commit to provide $450,000 of additional financing to AGS, under the same terms and conditions as the Financing Line. |
| **Navy MNO Plan:** | The Parties agree to instruct the Board of Directors and the Management Team to implement the Business Plan immediately upon Closing, and to immediately begin to work on developing the business plan and plan of action that would allow AGS to become an MNO service provider (cell phone service) for the U.S. Navy. |
| **Additional Capital:** | The Parties agree to work together towards a new round of capital raising with investors as soon as the company has demonstrated both the viability of the Navy MNO plan ands its ability to deliver on the Business Plan objectives, at which time it is likely that investor interest can be generated at a reasonable valuation. It is estimated that the company will be ready to approach investors for a new round of capital in 6-12 months. |
| **AGS Trading Structure:** | It is envisioned that the existing AGS legal structure will be used as the vehicle for this transaction. |
| **Business Areas:** | The present transaction is entered into with the intention of the Parties that Limited will center its business activities in the commercial mobile telephony market worldwide, while AGS will exclusively focus on mobile telecommunication applications for governments, military and NGO applications. As such, AGS and Limited will enter into a mutual non-compete agreement that will reserve for AGS the following market verticals and applications: |

- Government business and applications
- Military business and applications
- Telemedicine and healthcare applications [exact definition to be mutually agreed]
- All cruise ship communications services

June 8, 2011
Page 4 of 5

|  |  |
|---|---|
|  | In general any development of a commercial nature that is handled through a commercial mobile telephone carrier will be handled by Limited, but in the event that any such carrier demands services or applications that are governmental or military in nature, then Limited will introduce AGS to such opportunity so that such applications are provided by AGS. In the event this is not feasible or advisable, Limited will handle such sales and compensate to AGS as if AGS had made such sale. |
| **Technology and IP:** | At Closing, AGS and Limited will enter into a reciprocal licensing agreement of the existing intellectual property of each party and its future developments to ensure that all relevant intellectual property owned directly or indirectly by either AGS or Limited, as the case may be, is available to each party to pursue their respective business scopes. During the first 36 months following the Closing date this licensing agreement will be royalty-free for AGS. After the first 36 months AGS will have the option to: i) buy the relevant intellectual property for a total payment of **$5 million;** or ii) begin to make royalty payments under most-favored-nation terms. AGS and Limited will also ensure that all future intellectual property developed by the respective parties will be made available to each other at most favored nation license pricing |
|  | Additionally, the supply agreement for 2G and 3G AltoPods will be done at most-favored-nation pricing and terms. |
| **Fees & Expenses** | AGS will bear up to $50,000 in legal fees related to the transaction |
| **Business Plan Preparation** | AGS Team to work with dedicated SGI Team to prepare and finalise a Business Plan for approval by the AGS board and presentation to Investor groups. |
| **Timing** | • By July 7 – Execution of this Term Sheet by both parties (after this Term Sheet has been formally approved by Limited's Board) |
|  | • Both parties will exercise reasonable best efforts to prepare and execute a Definitive Agreement and related transaction documents (all jointly the "Definitive Agreements") no later than 30 days from the date of execution of this Term Sheet |
|  | • The Definitive Agreements will contemplate that the Closing will take place no later than 45 days from the date of signing. |
| **Board Of Directors** | The Board of AGS will comprise 7 Positions as follows: |
|  | -4 Investor Representatives. |

SGI Cambium, LLC
595 Madison Avenue, New York, NY 10022
Telephone: 212-582-4210 – Facsimile: 212-262-1031

July 7
~~June 8,~~ 2011
Page 5 of 5

- -1 CEO Position
- -1 Independent (Marty Bollinger)
- -1 Altobridge Representative

The terms indicated in this document have not been reviewed with counsel and are only intended to reflect the general business terms of a potential agreement between the Parties, the final terms and conditions would be reflected by the signing of the definitive final agreement.

This Term Sheet is executed on this __7__ of July, 2011

By:

Altobridge Limited
Name: MICHAEL FITZGERALD
Title: CEO

SGI Cambium, LLC
Name: JOSE AROZAMENA
Title: Managing Member

SGI Cambium, LLC
595 Madison Avenue, New York, NY 10022
Telephone: 212-582-4210 — Facsimile: 212-262-1031

**EXHIBIT B**



**SGI CAMBIUM**

## Proposed Investment in Nyx Networks

### Term Sheet

| | |
|---|---|
| **Parties:** | Altobridge Limited ("Limited") and SGI Cambium |
| **Target:** | Nyx Networks, LLC ("Nyx" or the "Company"), a Delaware limited liability company which is a wholly owned subsidiary of Limited created solely for the purpose of assuming and developing the business of selling telecommunications solutions and equipment based on its own intellectual property ("IP") as well as IP owned by Limited, to military organizations, government entities and other operators of "closed systems". |
| **Transaction:** | For the purpose of funding the development of Nyx and its business plan, SGI Cambium, through a new entity to be created solely for this purpose ("Newco"), will invest a total of $2.5 million into Nyx as follows:<br><br>- Newco will subscribe 1,500,000 Convertible Preferred Shares of $1.00 par value each (the "Preferred Shares") for a total investment of $1,500,000; and<br>- $1,000,000 in the form of a Senior Debenture<br><br>The Convertible Preferred Shares will represent 70% of the total equity of Nyx on a fully diluted basis and will vote accordingly. |
| **Intellectual Property Rights:** | At or prior to Closing Nyx Networks will be granted certain intellectual property rights as described in Annex 1 to this Term Sheet. |
| **Business Areas:** | The present transaction is entered into with the intention of the Parties that Limited will center its business activities in the commercial mobile telephony market worldwide, while Nyx will have exclusive rights to sell the licensed technology for mobile telecommunication applications for local, state and federal government agencies as well as non-government organizations (NGO's) in the United States, and systems owned and operated by, or on behalf of, military organizations worldwide.<br><br>In addition, Nyx will be able to cover other business areas, such as the cruise ship market and government entities or other users of closed systems outside the United States under a perpetual non-exclusive license. |

SGI Cambium, LLC
595 Madison Avenue, New York, NY 10022
Telephone: 212-582-4210 – Facsimile: 212-262-1031

| | |
|---|---|
| **Royalty-Free Period:** | During the first 36 months following the Closing date this licensing agreement will be royalty-free for Nyx. After the first 36 months Nyx will have the option to: i) buy the relevant intellectual property for a total payment of $5 million; or ii) begin to make royalty payments under most-favored-nation terms. Nyx and Limited will also ensure that all future intellectual property developed by the respective parties will be made available to each other at most favored nation license pricing |
| | Nyx will have the right to manufacture, or have manufactured by a third party, its own "Altopods" for use in the business areas indicated herein. In the event that Nyx decides to buy Altopods from Limited it will be charged at most-favored-nation pricing and terms. |
| **Fees & Expenses** | Each party will bear its own legal and advisory costs prior to Closing. |
| **Business Plan Preparation** | Nyx Team to work with dedicated SGI Cambium Team to prepare and finalise a Business Plan for approval by the Nyx board and presentation to Investor groups. |
| **Board of Directors** | The Board of Nyx will comprise 7 Positions as follows:<br>-4 Investor Representatives.<br>-1 CEO Position<br>-1 Independent (Marty Bollinger)<br>-1 Altobridge Representative |

The terms indicated in this document have not been reviewed with counsel and are only intended to reflect the general business terms of a potential agreement between the Parties, the final terms and conditions would be reflected by the signing of the definitive final agreement.

During the period between the execution of this Term Sheet and the earlier of the execution of the definitive agreements or 60 days from the date of execution of this Term Sheet, SGI Cambium will be granted exclusivity to finalize the proposed transaction under the terms indicated herein (the "Exclusivity").

Except for the Exclusivity, this term sheet is non-binding unless and until a final definitive agreement has been executed. This document and the terms outlined herein are to be considered confidential

This Term Sheet is executed on this __18th__ of October, 2011

SGI Cambium, LLC
595 Madison Avenue, New York, NY 10022
Telephone: 212-582-4210 – Facsimile: 212-262-1031

By:

_____          _____
Altobridge Limited                 SGI Cambium, LLC
Name: MICHAEL FITZGERALD           Name: JOSE AROZAMENA
      CEO                          Title: MANAGING MEMBER

## ANNEX 1

**Overview of Terms:**

Protected IP: Altobridge's Access Management System ("AMG") patented software and all improvements, upgrades, modifications and derivations thereof.

IP Licenses: Perpetual exclusive license for all IP comprising and integral to AMG for the Territories/markets as indicated herein; Perpetual non-exclusive license (or sub-license) on any other IP used by Altobridge, if any, in connection with implementing AMG-based solutions. Trade secrets, plans and specifications related to the licenses specified herein.

Exclusive Territories and Markets:
**United States:** All government (local, state and federal) agencies and services (including emergency responders); all Department of Defense applications and services for installation/use globally; and all NGO/Charitable organizations (i.e. American Red Cross).
**Rest of World:** All applications and services operated by, or on behalf of, military organizations. (Nyx will acknowledge the license of Aero Mobile in this area)

SGI Cambium, LLC
595 Madison Avenue, New York, NY 10022
Telephone: 212-582-4210 – Facsimile: 212-262-1031

|  |  |
|---|---|
| Non-Exclusive Territories and Markets: | **Worldwide:** Closed systems (i.e. non-public access) for non-military government systems and services worldwide.<br>**Cruise Ships:** All installations and services provided to cruise ships (the current services provided by and the contract with AT&T) |
| Royalties: | Nyx Network will enjoy a royalty-free period of 36 months from Closing on the IP Licenses. At the end of this period, Nyx Network will have the option to: a) make a one time payment of $5 million for a perpetual royalty-free license on the IP Licenses; or b) start paying royalties on the such licenses on a most-favored-nation basis |
| Ownership of ADN-L: | Nyx Networks will have full ownership of the IP, trade secrets, design (including drawings) and specifications for the ADN-L system and any upgrades, derivations or improvements thereof. For the sake of clarity, this excludes ownership of the AMG installed in the ADN-L and any other proprietary software imbedded into the ADN-L |
| IP Representations: | - AMG is the core and differentiating IP utilized by Altobridge for Altopod and other similar systems<br>- No AMG license has been granted to any party relating to any territory or channel licensed to Nyx<br>- No AMG license will be granted to any other party relating to any Nyx exclusive channel<br>- There is no owned or controlled IP used by Altobridge Corp for systems licensed to Nyx other than as listed on a schedule to be prepared by Altobridge Ltd in accordance with the above |

