UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
        :
ALTO LENDING, LLC,        :
        :
        Plaintiff,        :
        :    Case No.: 1:12-cv-07391-ALC
    -against-        :
        :
ALTOBRIDGE LIMITED, ALTOBRIDGE        :    **ORAL ARGUMENT REQUESTED**
CORPORATION and INTEL CORPORATION,        :
        :
        Defendants.        :
        :
---------------------------------------------------------------x

**ALTOBRIDGE LIMITED AND ALTOBRIDGE CORPORATION'S
REPLY MEMORANDUM OF LAW IN
<u>FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

SULLIVAN & WORCESTER LLP
Andrew T. Solomon
Natalie S. Lederman
1633 Broadway, 32nd Floor
New York, NY 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendants Altobridge Limited
and Altobridge Corporation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.  THE PARTIES DID NOT EXPRESSLY OR IMPLICITLY ENTER INTO
    A BINDING JOINT VENTURE AGREEMENT ........................................................1

    A.  The Term Sheets Discharged the Alleged December 2010 Oral Agreement.......1

    B.  Plaintiff Cannot Avoid the Parol Evidence Rule by Omitting the
        Term Sheets ...................................................................................................4

    C.  Plaintiff Does Not Make A Plausible Case for an Implied Joint Venture............5

II. PLAINTIFF IS NOT ENTITLED TO SPECIFIC PERFORMANCE BECAUSE
    THE JOINT VENTURE WAS AT WILL ...................................................................8

III. PLAINTIFF ALL BUT ADMITS THAT IT HAS ALLEGED FRAUD BY
     HINDSIGHT ..............................................................................................................9

IV. CONCLUSION..........................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                     **Page**

*2004 McDonald Ave. Realty, LLC v. 2004 McDonald Ave. Corp.*,
   50 A.D.3d 1021, 858 N.Y.S.2d 203 (2d Dep't 2008) .................................................. 6

*4Kids Entm't, Inc. v. Upper Deck Co.*,
   797 F. Supp. 2d 236 (S.D.N.Y. 2011) ........................................................................ 3

*Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*,
   No. 06-CV-3893 (JFB)(AKT), 2010 WL 446042 (E.D.N.Y. Feb. 1, 2010) ........................ 7, 8

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*,
   70 A.D.3d 423, 894 N.Y.S.2d 47 (1st Dep't 2010) ...................................................... 6

*Beekman Inv. Partners, L.P. v. Alene Candles, Inc.*,
   No. 05 Civ. 8746 (DLC), 2006 WL 330323 (S.D.N.Y. Feb. 14, 2006) .................................. 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) ........................................................................ 6

*Berman v. Sugo LLC*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) ........................................................................ 6

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*,
   974 F. Supp. 293 (S.D.N.Y. 1997) ............................................................................. 2

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) ..................................................................................... 5

*Braten v. Bankers Trust Co.*,
   60 N.Y.2d 155, 468 N.Y.S.2d 861 (1983) .................................................................. 2

*Conley v. Gibson*,
   355 U.S. 41 (1957) .................................................................................................. 6

*Cortec Indus. Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ....................................................................................... 4

*Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*,
   3 N.Y.3d 577, 822 N.E.2d 768 (2004) ....................................................................... 4

*Gelman v. Buehler*,
   __ N.Y.3d __, 2013 NY Slip Op. 01991 (Mar. 26, 2013) ............................................... 9

*Hooker Chems. & Plastics Corp. v. Int'l Minerals & Chem. Corp.*,
   90 A.D.2d 991, 456 N.Y.S.2d 587 (4th Dep't 1982) ..................................................... 9

*HP Hotel Sponsor, LLC v. Strategic Capital Solutions, LLC*,
   29 Misc.3d 1204(A), 958 N.Y.S.2d 307 (Sup. Ct. N.Y. Cnty. 2010) ......................................... 6

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991) ................................................................................................. 4

*Indep. Energy Corp. v. Trigen Energy Corp.*,
   944 F. Supp. 1184 (S.D.N.Y. 1996) ...................................................................................... 2

*Junk v. Aon Corp.*,
   No. 07 Civ. 4640 (LMM) (GWG), 2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007) ...................... 3

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
   494 F. App'x 153 (2d Cir. 2012) ........................................................................................... 4

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*,
   No. 00 Civ. 6270 (DC), 2002 WL 392291 (S.D.N.Y. Mar. 13, 2002) ..................................... 7

*Marine Midland Bank-Southern v. Thurlow*,
   53 N.Y.2d 381, 442 N.Y.S.2d 417 (1981) ............................................................................. 1

*Muzak Corp. v. Hotel Taft Corp.*,
   1 N.Y.2d 42, 133 N.E.2d 688 (1956) .................................................................................... 4

*Myers v. Waverly Fabrics, Div. of F. Schumacher & Co.,*,
   101 A.D.2d 777, 475 N.Y.S.2d 860 (1st Dep't 1984) ............................................................ 7

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012) ................................................................................... 6

*R.G. Grp., Inc. v. Horn & Hardat Co.*,
   751 F.2d 69 (2d Cir. 1984) ............................................................................................ 5, 6, 7

*Reprosystem, B.V. v. SCM Corp.*,
   727 F.2d 257 (2d Cir. 1984) ............................................................................................. 5, 6

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
   309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003) ............................................................ 8

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) .................................................................................................. 4

*Rutecki v Gow & Co.*,
   289 A.D.2d 1066, 735 N.Y.S.2d 682 (4th Dep't 2001) .......................................................... 9

*Southwick Clothing LLC v. GFT (USA) Corp.*,
   No. 99 CV 10452 (GBD), 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ................................ 6

*Stone v. Schulz*,
  231 A.D.2d 707, 647 N.Y.S.2d 822 (2d Dep't 1996) ................................................................ 2

*Tedeschi v. Crocker*,
  No. SC-08-2816, 2009 WL 1561577 (Poughkeepsie City Ct. May 6, 2009) ............................ 2

*Vassell v. Reliance Sec. Grp., PLC*,
  322 F. Supp. 2d 459 (S.D.N.Y. 2004) ...................................................................................... 6

*Verzani v. Costco Wholesale Corp.*,
  641 F. Supp. 2d 291 (S.D.N.Y. 2009) ...................................................................................... 5

*Wayland Inv. Fund, LLC v. Millennium Seacarriers, Inc.*,
  111 F. Supp. 2d 450 (S.D.N.Y. 2000) ...................................................................................... 3

*Winston v. Mediafare Entm't Corp.*,
  777 F.2d 78 (2d Cir. 1986) ....................................................................................................... 6

*Yoo v. Piano Post Inc.*,
  6 Misc.3d 59, 791 N.Y.S.2d 271 (2d Dep't 2004) ................................................................... 1

## Rules and Statutes

New York Partnership Law § 62(1)(b) ........................................................................................ 9

## Other

*Restatement (Second) of Contracts* § 209 (1979) ...................................................................... 3

*Restatement (Second) of Contracts* § 213.1 (1979) ................................................................... 2

Robert L. Haig, *Commercial Litigation in New York State Courts* § 66:16 (3d Ed. 2010) ............ 2

Defendants Altobridge Limited and Altobridge Corporation (together, "Altobridge"), through their attorneys, Sullivan & Worcester LLP, submit this reply memorandum of law in further support of their motion to dismiss the Amended Complaint.[1]

## I. THE PARTIES DID NOT EXPRESSLY OR IMPLICITLY AGREE TO A BINDING JOINT VENTURE AGREEMENT

### A. The Term Sheets Discharged the Alleged December 2010 Oral Agreement

In its moving papers, Altobridge established that the 2011 Term Sheets constitute successive binding *written* agreements between Altobridge and SGI Cambium (Alto's assignor) that the parties would not be bound to pursue the joint venture described in those Term Sheets until and unless they executed definitive contracts. In response, Alto claims that the 2011 Term Sheets "did not change the material terms agreed upon in December 2010 and merely evidenced the parties' existing relationship [in an oral joint venture]." (P. Mem. 16). But this argument runs afoul of the parol evidence rule.

The parol evidence rule "operates to exclude evidence of all prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of their writings." *Marine Midland Bank-Southern v. Thurlow*, 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419 (1981). Despite its name, the parol evidence rule is a substantive rule of law, not evidence. *Yoo v. Piano Post Inc.*, 6 Misc.3d 59, 60, 791 N.Y.S.2d 271, 271 (2d Dep't 2004). The rationale for the rule is as follows:

> The purpose for the rule is that the intention of the parties is evidenced by an apparently complete written contract, which serves to place themselves beyond the uncertainties of oral testimony, and the courts are not inclined to defeat this presumed intention of the parties.… Moreover, the rule protects against fraud, perjury, infirmity of memory, and the death of witnesses.

---

[1] Unless otherwise stated, capitalized terms should be read as defined in Altobridge's Memorandum of Law in Support of Its Motion to Dismiss dated February 21, 2013 ("Altobridge Mem."). We cite to Plaintiff's opposition memorandum as "P. Mem." and to the Amended Complaint as "Am. Comp."

*Tedeschi v. Crocker*, No. SC-08-2816, 2009 WL 1561577, at *3 (Poughkeepsie City Ct. May 6, 2009).  Thus, where one binding agreement is followed by a subsequent binding integrated agreement on the same subject matter, the parol evidence rule dictates that the latter discharges the former.  *See Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 298 (S.D.N.Y. 1997); *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1195-96 (S.D.N.Y. 1996); *see generally, Restatement (Second) of Contracts* § 213 (1979). The discharge takes place by operation of law if the writing is "integrated."  *See Braten v. Bankers Trust Co.*, 60 N.Y.2d 155, 162, 468 N.Y.S.2d 861, 864 (1983); *Stone v. Schulz*, 231 A.D.2d 707, 707, 647 N.Y.S.2d 822, 823 (2d Dep't 1996); *Restatement (Second) of Contracts* § 213(1)-(2); Robert L. Haig, *Commercial Litigation in New York State Courts* § 66:16, 751 (3d Ed. 2010) ("In any contract case, the 'parol evidence rule' operates to bar the admission of antecedent agreements….").

It is undisputed that the transaction described in the Term Sheets is the same as the alleged oral joint venture agreement.  (P. Mem. 17).  Alto describes the oral joint venture of December 2010 as follows: the name is the "Nyx venture"; SGI's investment in Nyx would be $2.5 million; SGI and Altobridge would split profits and losses 70-30; and Nyx would receive "the exclusive right to sell hardware and software manufactured by Altobridge as well as an exclusive license from Altobridge for the IP that serviced the government and military channels. (See P. Mem. at 16 quoting Am. Comp. ¶ 17).  The October 2011 Term Sheet is virtually identical.  It provides for establishing a joint venture entity named "Nyx" (short for Nyx Networks, LLC); SGI promised to invest $2.5 million into Nyx; SGI would receive convertible preferred shares representing 70% of the total equity of Nyx on a fully diluted basis; Nyx's business would be in the "commercial mobile telephony market" with Nyx to obtain the

2

"exclusive rights to sell the technology [described on Annex 1 as Altobridge's IP] … that covered … military organizations worldwide." Am. Comp. ¶ 30.  It is also ironic that Alto disclaims the Term Sheets as being the operative agreement concerning its contractual relationship (or lack thereof) with Altobridge, while in another part of its pleadings, it asks the Court to order Altobridge to specifically perform the Term Sheet transaction.

Nor can there be any dispute that the Term Sheets are integrated with respect to the rules of engagement for the negotiation of the proposed joint venture.  An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement. *Restatement (Second) Contracts* § 209 (1979).  Here, the Term Sheets are integrated with respect to whether and how the parties could be bound to the proposed joint venture.  The fact that the Term Sheets do not have an express "integration" or "merger" clause does not prevent the Court from finding that the Term Sheets are, in fact, integrated agreements, even in the motion to dismiss context.  *See, e.g., Wayland Inv. Fund, LLC v. Millennium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 454-55 (S.D.N.Y. 2000); *4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 245 (S.D.N.Y. 2011); *Junk v. Aon Corp.*, No. 07 Civ. 4640 (LMM) (GWG), 2007 WL 4292034, at *4 (S.D.N.Y. Dec. 3, 2007) (dismissing breach of oral contract claim because "the offer letter … outlining the terms of … employment … appears complete on its face and therefore constitutes an integrated agreement between the parties.  As such, any prior oral agreement between them is effectively barred in accordance with the parol evidence rule.")

It is not unusual for a complex business transaction to progress from verbal understandings to term sheets, and then to final documents.  If, during that process, the parties agree in writing not to be bound unless and until they execute formal contracts, that agreement cannot be altered by prior verbal agreements.  This is so not just because of the parol evidence

3

rule, but also because any other interpretation would render the written agreement meaningless, in derogation of basic principles of contract interpretation. *See Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 133 N.E.2d 688 (1956); *see also Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*, 3 N.Y.3d 577, 582-83, 822 N.E.2d 768 (2004) (a contract is to be interpreted so that no portion of the contract is rendered meaningless).[2]

### B.  Plaintiff Cannot Avoid the Parol Evidence Rule by Omitting the Term Sheets

Protesting perhaps too much, Alto emphatically urges the Court not consider the Term Sheets.  (P. Mem. 8-13).  This plea is utterly without basis.  The standards are as follows:

> In deciding a motion to dismiss, a court may consider the facts alleged in the complaint, together with "any statements or documents incorporated in it by reference, as well as ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted).  We have cautioned that a plaintiff cannot "evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference."  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 155-56 (2d Cir. 2012).

To paraphrase from that passage, Alto "references" both Term Sheets in its Amended Complaint and that it "possessed" and "knew about" the Term Sheets in "bringing the suit." Indeed, Alto expressly relies on the Term Sheets as supposedly "evidenc[ing] the parties' existing relationship."  (P. Mem. 16).  And the Amended Complaint, in fact, alleges that

---

[2] Alto also makes a spurious argument that the Term Sheets are not binding because they refer to the "present transaction."  (P. Mem. 18).  But the rest of the paragraph makes plain that the "present transaction" is the transaction contemplated by the Term Sheets.  In any event, seizing on the tense of one provision does not nullify the other parts of the Term Sheet that specifically set the rules of engagement.

4

"plaintiff and Altobridge memorialized the final agreed upon principal terms of the Nyx venture in a modified term sheet." (Am. Comp. ¶ 28).

These are not mere "passing references," (P. Mem. 9), and Alto certainly "cannot evade" scrutiny of these Term Sheets simply because they were tactically omitted as exhibits to Alto's pleading.  *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (considering term sheet where plaintiff has "relied on the terms and effect of a document in drafting the complaint," the document is otherwise "integral to the complaint," and may be considered in deciding a motion dismiss, even if not formally incorporated by reference (alteration and internal quotation marks omitted)); *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009) ("the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' [breach of contract] claim").

Finally, Alto's contention that the "Term Sheets do not contradict the factual allegations in Plaintiff's [Amended Complaint]" (P. Mem. at 13) is flatly wrong.  The Term Sheets undercut the heart of Plaintiff's case: the non-binding effect of the alleged December 2010 oral agreement.

**C.  Plaintiff Does Not Make A Plausible Case for an Implied Joint Venture**

Plaintiff asks the Court to infer the parties' intention to enter into a joint venture from their "course of conduct" over a period of "at least ten months." (P. Mem. 14).  During that period, Plaintiff claims that it "committed financing, found customers and recruited and retained former military personnel…." (P. Mem. 14).  None of that conduct, however, is sufficient to establish a binding contract to pursue the complex joint venture then under negotiation.

The starting point is a trio of cases authored by Judge Pratt in the 1980s: *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257 (2d Cir. 1984); *R.G. Grp., Inc. v. Horn & Hardat Co.*,

751 F.2d 69 (2d Cir. 1984); and *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1986).[3] Each involves attempts by a negotiating party to establish a contract where no final, definitive contract had been executed. The court's inquiry focuses on intent: "Did the parties intend not to be bound prior to execution of a formal contract? Or, did they merely contemplate that their informal agreement would be reduced to a formal writing at some later time?" *Reprosystem*, 727 F.2d at 261. In *R.G. Grp.,* Judge Pratt laid out the four factors a court should consider in assessing whether "parties' words and deeds, within a given bargaining context, show an intent to be bound only by a written agreement: (a) an explicit reservation "to be bound only when a written agreement is signed" (garnering the most weight); (b) part performance that" has been accepted by the party disclaiming the contract"; (c) "whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to"; and (d) "whether the agreement concerns those complex and substantial business matters where requirements that contracts be in writing are the norm rather than the exception." *R.G. Grp.*, 751 F.2d at 75-76.

    Three (a, c, and d) of the four factors are conclusively against Alto:

> (a) the parties agreed in writing not to be bound absent execution of formal documents;

---

[3] All three cases were on review of summary judgment. But that does not mean that the issue cannot be resolved on a motion to dismiss. First, the standard of review is now more rigorous: the test is no longer the "fair notice" of *Conley v. Gibson*, 355 U.S. 41 (1957), but plausibility under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). Moreover, the facts, even as alleged by Alto (and supplemented by the Term Sheets), are so dramatically one-sided against Alto that dismissal would be warranted under any standard of review. Indeed, in recent "preliminary agreement" cases, where the writing requires execution of definitive documents, but where no such execution has occurred, dismissal has been the norm in both state and federal cases. *See, e.g., HP Hotel Sponsor, LLC v. Strategic Capital Solutions, LLC*, 29 Misc.3d 1204(A), 958 N.Y.S.2d 307 (Sup. Ct. N.Y. Cnty. 2010); *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 894 N.Y.S.2d 47 (1st Dep't 2010); *2004 McDonald Ave. Realty, LLC v. 2004 McDonald Ave. Corp.*, 50 A.D.3d 1021, 858 N.Y.S.2d 203 (2d Dep't 2008); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344 (S.D.N.Y. 2012); *Berman v. Sugo LLC*, 580 F.Supp.2d 191 (S.D.N.Y. 2008); *Beekman Inv. Partners, L.P. v. Alene Candles, Inc.*, No. 05 Civ. 8746 (DLC), 2006 WL 330323 (S.D.N.Y. Feb. 14, 2006); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 CV 10452 (GBD), 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004); *Vassell v. Reliance Sec. Grp., PLC*, 322 F. Supp. 2d 459 (S.D.N.Y. 2004).

>   (c) the parties had not agreed to all of the terms with only execution being left. Quite the contrary, the Amended Complaint details the fact that the parties were changing material terms throughout 2011, and indeed, until the negotiations broke off (Am. Comp. ¶ 27;
>
>   (d) it is undisputed that a complex business deal of this nature would ordinarily be documented. We raised this point in our opening papers (Altobridge Mem. 12 (discussing *RG. Grp.* factors)), and Alto has not disputed it.

Alto pins all of its hopes on the fourth factor (b), partial performance, but its argument falls wide of the mark:

*First,* the parties never partially performed the principal aspects of the proposed joint venture. Alto had agreed to contribute $2.5 million in exchange for Nyx securities; Altobridge had agreed to contribute an IP license—neither happened.[4] While Alto does allege that it took preparatory steps in anticipation of the joint venture (*e.g.,* soliciting customers, taking potential orders, and retaining an executive), it fails to allege that the venture became operational.

*Second,* Alto cites two cases for its "part performance" claim. In neither case, however, did the parties enter into a written agreement *not to be bound* absent the execution of a definitive written contract. *Cf. Kidz Cloz, Inc. v. Officially for Kids*, *Inc.*, No. 00 Civ. 6270(DC), 2002 WL 392291 (SDNY Mar. 13, 2002) and *Abeles, Inc. v. Creekstone Farms Premium Beef, LLC,* No. 06-CV-3893 (JFB)(AKT), 2010 WL 446042 (E.D.N.Y. Feb. 1, 2010). Moreover, in *Kidz Cloz* the parties operated together in business "*for more than 13 years.*" 2002 WL 392291, *3 n. 1. In *Abeles,* the parties operated pursuant to the putative joint venture for over three years and did

---

[4] In ¶ 29 of the Amended Complaint, Plaintiff comes up short of alleging that it actually contributed capital into Nyx ("plaintiff was responsible for procuring a $2.5 million financial investment"). Alto does allege that Altobridge granted Nyx "a perpetual exclusive license for all related IP." But that is contradicted in ¶ 38, where Alto complains that Altobridge "reneged" on its original promise to grant the exclusive license. Moreover, a perpetual license cannot be performed within one year, so any such agreement would have to be in writing to be enforceable. *See Myers v. Waverly Fabrics, Div. of F. Schumacher & Co.*, 101 A.D.2d 777, 475 N.Y.S.2d 860 (1st Dep't 1984).

7

$30 million in business. 2010 WL 446042, at *6. Here, Alto alleges that it procured future orders for Nyx, but it does not allege generating a single dollar in revenue. (Am. Comp. ¶¶ 24-25).

Nor can Alto find support in *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003). There, the parties actually implemented the joint venture. The *Richbell* joint venturers had entered into a non binding term sheet; a "classic example of an unenforceable 'mere agreement to agree.'" *Id.* at 297, 765 N.Y.S.2d at 583. But thereafter, they combined resources and carried out the basic purpose of the contemplated joint venture: to acquire a company named Gelco. Thus, plaintiff contributed its equity in a company named "Harpur;" defendants contributed $85 million into the JV entity, *id.* at 292, 765 N.Y.S.2d at 580; and plaintiff and defendant entered into a stockholder agreement for the JV entity. *Ibid.* The entity, thus capitalized, completed the planned acquisition of the company named "Gelco," creating a combined value of $261 million. *Id.* at 293, 765 N.Y.S.2d at 580. Here, by contrast, Alto allegedly negotiated a few transactions for the proposed venture, made arrangements to retain a key employee, and took other preparatory steps. (Am. Comp. ¶¶ 21-25). But the parties took no steps, together or individually, remotely comparable to those of the *Richbell* parties.

The fundamental point that Alto misses is that to find a joint venture based on an "implicit agreement," a court looks to what actually happened operationally as alleged by a plaintiff (as in *Richbell*), not merely what was promised or planned.

## II.   PLAINTIFF IS NOT ENTITLED TO SPECIFIC PERFORMANCE BECAUSE THE JOINT VENTURE WAS AT WILL

Even if the parties had entered into an oral joint venture agreement, the agreement would be "at will," thus precluding Alto's claim for specific performance.

Plaintiff acknowledges that a joint venture is a "partnership for a limited purpose." (P. Mem. 13). Plaintiff also admits that the joint venture advocated here is based on an alleged *oral* agreement. Under New York Partnership Law § 62(1)(b), "a partnership formed by oral agreement may be dissolved unilaterally if 'no definite term or particular undertaking is specified' in the underlying agreement." *Gelman v. Buehler*, __ N.Y.3d __, 2013 NY Slip Op. 01991 (Mar. 26, 2013). Alto tries to dodge this rule by claiming the exception that this alleged joint venture was for "completion of a specific project," which Alto identifies as a project to establish "an alternative means for marketing and selling a substantial component of Altorbridge's business, namely, secured, portable private cellular wireless communications technology utilized by military markets and governments." (P. Mem. 15).[5] But, it is plain from the Term Sheets and Alto's own pleading that the contemplated venture was an ongoing business. That is why the October 2011 Term Sheet describes a long-term sales venture that includes a "Royalty-Free Period" of 36 months and the establishment of an ongoing business entity, Nyx, with a seven-person board of directors, directing a business pursuant to a "Business Plan."

## III. PLAINTIFF ALL BUT ADMITS THAT IT HAS ALLEGED FRAUD BY HINDSIGHT

In its opening memorandum, Altobridge made two main points regarding Alto's fraud claim: (1) that Alto cannot plead reasonable reliance on verbal assurances that the joint venture would be consummated, because the Term Sheets make clear that no party is bound until definitive agreements are executed; and (2) in any event, Alto has not pleaded scienter, only a

---

[5] The case that Alto cites for this point of law is exactly on point factually (but for Altobridge): *Rutecki v Gow & Co.*, 289 A.D.2d 1066, 735 N.Y.S.2d 682 (4th Dep't 2001) (finding no discrete project for ongoing business). Alto's other case is wholly distinguishable. *Hooker Chems. & Plastics Corp. v. Int'l Minerals & Chem. Corp.*, 90 A.D.2d 991, 456 N.Y.S.2d 587 (4th Dep't 1982) (court found fact issue as to whether venture was for a fixed term or at will, not whether it was for a specific project).

9

logically flawed version of fraud by hindsight. Alto's response does nothing to rehabilitate its position.

Alto's brief contains a section on scienter, but the supporting argument is a *non sequitur*. Alto first assures the Court that the Amended Complaint "presents circumstantial allegations of [Altobridge's] conscious intent to defraud," but cites nothing from its pleading. (P. Mem. 41). Then, Alto concludes with a statement about its allegedly "reasonable reliance." (P. Mem. 43).

This discussion of "reasonable reliance" is similarly unavailing. Alto's argument is based on timing: in March 2011, Fitzgerald supposedly assured Plaintiff of Intel's approval. The first Term Sheet, however, was signed in July 2011. Alto thus claims reasonable reliance on the assurance of a future deal for the brief period of March 2011 to July 2011. If that is so, it is not alleged as such in the Amended Complaint. More particulars are required under Rule 9(b). Nor does Alto explain how it could reasonably rely on any such verbal assurance when it had obtained nothing regarding the complex deal in writing, when it admits that the terms of the deal were changing, (Am. Comp. ¶ 27), when Altobridge still had not given an intellectual property license to Nyx, and when the parties were still negotiating terms, as evidenced by the ongoing negotiations from December 2010 through December 2011. (Am. Comp. ¶ 37).

Finally, Alto completely ignores its failure to differentiate between the two Altobridge entities, parent and subsidiary. This is no small matter and is grounds enough to dismiss the Amended Complaint.

## IV.  CONCLUSION

For the reasons set forth above and in Altobridge's moving papers, Plaintiff's Amended Complaint must be dismissed with prejudice.

| | |
|---|---|
| Dated: New York, New York<br>April 5, 2013 | SULLIVAN & WORCESTER LLP<br><br>By: /s/Andrew T. Solomon<br>    Andrew T. Solomon<br>    Natalie S. Lederman<br>1633 Broadway, 32nd Floor<br>New York, New York 10019<br>(212) 660-3000<br><br>*Attorneys for Altobridge Limited*<br>*and Altobridge Corporation* |

11