UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

ALTO LENDING, LLC,

               Plaintiff,

     -against-             No. 12 Civ. 7391 (ALC)(DCF)

ALTOBRIDGE LIMITED, ALTOBRIDGE
CORPORATION, and INTEL        **ORAL ARGUMENT REQUESTED**
CORPORATION,

             Defendants.

----------------------------------------------------------x

## DEFENDANT INTEL CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF ALTO LENDING LLC'S AMENDED COMPLAINT WITH PREJUDICE

GIBSON, DUNN & CRUTCHER LLP
ADAM H. OFFENHARTZ
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Defendant Intel Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 3

    A.   Plaintiff's Term Sheets Should Be Considered on this Motion to Dismiss ............... 3

    B.   Plaintiff Failed to Plead Required Elements of a Joint Venture ............................. 5

    C.   Plaintiff Failed to Plead Fraud with *Any* Specificity or Scienter Absent Hindsight, and Plaintiff Cannot Plead Reasonable Reliance or Legally Cognizable Damage ................................................................................................ 7

    D.   Plaintiff Pleads Only Conclusory Allegations And Identifies No Facts That Could Be Construed As Tortious Interference .......................................................... 9

CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allison v. Roundtable Inv. Mgmt. Co., LP*,
    447 F. App'x 274 (2d Cir. 2012) ...................................................................................... 8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................... 2

*CAC Grp., Inc. v. Maxim Grp., LLC*,
    No. 12 Civ. 5901(KBF), 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ........................ 6

*Capricorn Investors III, L.P. v. CoolBrands Int'l, Inc.*,
    66 A.D.3d 409, 886 N.Y.S.2d 158 (1st Dep't 2009) ..................................................... 8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ........................................................................................... 4

*Chase Manhattan Bank, N.A. v. Fidata Corp.*,
    700 F. Supp. 1252 (S.D.N.Y. 1988) .............................................................................. 8

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) .................................... 4

*DiFolco v. MSNBC Cable LLC*,
    662 F.3d 104 (2d Cir. 2010) ...................................................................................... 3, 4

*Evercrete Corp. v. H-Cap Ltd.*,
    429 F. Supp. 2d 612 (S.D.N.Y. 2006) ........................................................................... 7

*G.K.A. Beverage Corp. v. Honickman*,
    55 F.3d 762 (2d Cir. 1995) ........................................................................................... 10

*Hassan v. Deutsche Bank A.G.*,
    515 F. Supp. 2d 426 (S.D.N.Y. 2007) ........................................................................... 9

*In re 50 Pine Co., LLC*,
    317 B.R. 276 (Bankr. S.D.N.Y. 2004) ........................................................................... 4

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ............................................................................................... 4

*Lama Holding Co. v. Smith Barney, Inc.*,
    88 N.Y.2d 413, 668 N.E.2d 1370 (1996) ....................................................................... 9

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012) ....................................................................... 3, 4

*Pope v. N.Y. Prop. Ins. Underwriting Ass'n*,
    66 N.Y.2d 857, 489 N.E.2d 247 (1985) ........................................................................ 8

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) ........................................................................................... 7

## TABLE OF AUTHORITIES

Page(s)

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
　751 F.2d 69 (2d Cir. 1984) ............................................................................ 6

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
　No. 03 Civ. 1895, 2007 WL 39301 (S.D.N.Y. Jan. 8, 2007) ......................... 9

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
　309 A.D.2d 288, 765 N.Y.S.2d 575 (2003) ................................................... 5

*Rombach v. Chang*,
　355 F.3d 164 (2d Cir. 2004) ........................................................................... 7

*Ross v. Louise Wise Serv., Inc.*,
　8 N.Y.3d 478, 868 N.E.2d 189 (2007) ........................................................... 3

*Scheck v. Francis*,
　26 N.Y.2d 466, 260 N.E.2d 493 (1970) .......................................................... 6

*Starr Found. v. Am. Int'l Grp., Inc.*,
　76 A.D.3d 25, 901 N.Y.S.2d 246 (1st Dep't 2010) ........................................ 9

*Valley Lane Indus. v. Victoria's Secret Direct Brand Mgmt., LLC*,
　455 F. App'x 102 (2d Cir. 2012) .................................................................. 10

*Yung v. Lee*,
　432 F.3d 142 (2d Cir. 2005) ........................................................................... 5

*Zeising v. Kelly*,
　152 F. Supp. 2d 335 (S.D.N.Y. 2001) ............................................................ 6

## STATUTES & RULES

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 3, 4

Fed. R. Civ. P. 9(b) .............................................................................................. 7

## PRELIMINARY STATEMENT[1]

At bottom, Plaintiff seeks compensation because it worked on a "Proposed Investment" with the Altobridge Defendants and that Proposed Investment deal was never consummated.  But Plaintiff's case fails because the Proposed Investment was memorialized in two "nonbinding" Term Sheets "intended to reflect the general business terms of a potential agreement between the parties" that would only be effective upon execution of "a final definitive agreement," which was never finalized or executed.

Understandably, given the Term Sheets' provisions, Plaintiff dedicates multiple pages of its Opposition to avoiding the Term Sheets.  Plaintiff's original Complaint extensively and explicitly referenced the Term Sheets and relied upon their contents.  Then, in the Amended Complaint—aware that the Term Sheets defeated its case—Plaintiff attempted unsuccessfully to delete all formal references to the Term Sheets.  Despite this attempt at "artful" pleading, both numerous explicit references to the Term Sheets as well as their contents remain in and central to the Amended Complaint.  Indeed, Plaintiff's Eighth Cause of Action seeks specific performance of the October Term Sheet.  Because the Term Sheets are not only referenced in the Amended Complaint but integral to it, this Court can plainly consider them on this motion to dismiss.

Faced with the plain language of the Term Sheets, Plaintiff can bring no claim for breach of contract.  Instead, Plaintiff seeks to manufacture claims premised on various tort law theories in a desperate attempt recover its pre-deal expenses (from Intel and the Altobridge Defendants) and the return it anticipated on the Proposed Investment (from the Altobridge Defendants).  But Plaintiff's claims fail because they are either directly contradicted by the Term Sheets or proffer

---

[1] Unless otherwise stated, capitalized terms should be read as defined in Intel's opening memorandum ("Opening Br.").  Intel refers to Plaintiff's opposition memorandum as the "Opposition" or "Opp. Br."  Intel also incorporates by reference the arguments in the Altobridge Defendants' contemporaneously filed reply brief, which separately demonstrates Plaintiff's inability to plead fraud and claims premised on a joint venture.

only "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."[2] All of Plaintiff's detours in its Opposition into the rules of evidence, inapplicable rules of procedure, and a legal world where central documents on its assignee's own letterhead can be ignored, are unavailing. Such efforts at obfuscation have no effect on, and certainly do not cure, Plaintiff's failure, in its second attempt, to plead claims that survive a motion to dismiss.

First, Plaintiff's claim against Intel for aiding and abetting a breach of fiduciary duty (premised on the existence of a joint venture with Altobridge) is belied by the plain language of the Term Sheets, which explicitly states the parties' intent *not to be bound* and that no "final definitive agreement" was ever reached. Without an agreement or intent to be bound, no joint venture existed, and any fiduciary duty claims premised on such a venture fail.

Second, Plaintiff's claim against Intel for fraudulent misrepresentation is bereft of factual allegations—it fails to identify any representation made by Intel to Plaintiff, and it fails to plead that Plaintiff relied on any Intel representation or that Intel made any representation with the knowledge and intent that Plaintiff would rely on such a statement. Plaintiff has not pled reliance, nor can it possibly do so, because on the face of the Term Sheets it explicitly disavowed the existence of a completed, finalized, and signed investment deal. Finally, Plaintiff impermissibly points to December 2011 activities as the sole evidence of scienter behind purported misrepresentations made in March 2011, which pleads only fraud by hindsight.

Finally, Plaintiff's claim against Intel for tortious interference is also comprised of nothing more than conclusory allegations which fail as a matter of law. Plaintiff must plead facts evidencing either (i) malice, or (ii) tortious or criminal conduct to survive a motion to dismiss. Here, Plaintiff's allegations undermine its claim, as they make clear that any Intel interference

---

[2]   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

was motivated by Intel's own economic self-interest, destroying Plaintiff's argument that Intel acted with malice. Furthermore, Plaintiff fails to identify any required tortious or criminal conduct directed *not at Plaintiff but at the third party with whom Intel interfered*, the Altobridge Defendants. This inability to plead (i) malice or (ii) tortious or criminal conduct that targeted the Altobridge Defendants warrants dismissal.

Accordingly, this Court should dismiss all of Plaintiff's causes of action against Intel for aiding and abetting a breach of fiduciary duty, fraud, and tortious interference with business opportunity/business relations, as well as any claims for punitive damages,[3] with prejudice.

## ARGUMENT

**A.    Plaintiff's Term Sheets Should Be Considered on this Motion to Dismiss**

The Term Sheets underlying the proposed investment at issue here should be considered on this motion to dismiss, because they are (i) referenced in Plaintiff's pleadings, and (ii) integral to the Amended Complaint. As this Court has stated, "'[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 176 (S.D.N.Y. 2012) (Carter, J.) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)). Furthermore, "the court may also consider a document that is not

---

[3]    Plaintiff's Opposition relies on a case that makes clear the Amended Complaint identifies no grounds for punitive damages. *See Ross v. Louise Wise Serv., Inc.*, 8 N.Y.3d 478, 489, 868 N.E.2d 189 (2007) (reversing trial court and intermediate appellate court, dismissing claim for punitive damages, and holding that even a case of wrongful adoption where an agency lied about the medical and psychiatric background of an adoptee did not provide grounds for punitive damages). As *Ross* demonstrates, a Plaintiff must plead facts evidencing "a high degree of moral turpitude" or "criminal indifference" or face dismissal. *Id.* at 489, 868 N.E.2d 189.

incorporated by reference, 'where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.'" *Id.* (quoting *DiFolco*, 622 F.3d at 111).[4]

In its original Complaint,[5] Plaintiff made extensive, explicit references to the Term Sheets.[6] Then, made aware by Defendants' pre-motion letters that the Term Sheets spelled defeat for Plaintiff's case, Plaintiff resorted to "artful" pleading to seek to avoid the inevitable dismissal with prejudiced warranted by those documents. In its Amended Complaint, Plaintiff attempted to delete all formal references to the Term Sheets. However, given how intertwined the Term Sheets are with Plaintiff's claims, Plaintiff nonetheless retained numerous explicit references to them as well as extensive implicit references.[7] These references, both express and implied, alone permit the consideration of the Term Sheets on this motion to dismiss.[8]

The Term Sheets are also integral to the Amended Complaint. The gravamen of this action is that Intel somehow owes Plaintiff for costs Plaintiff's assignee incurred in connection with an unconsummated, "Proposed Investment." Those Term Sheets are part and parcel of the

---

[4]   Plaintiff argues that the Court's consideration of the Term Sheets should convert this into a Rule 56 motion, but no such conversion is warranted. The rationale behind the conversion of a motion to dismiss into one for summary judgment is straightforward—and plainly inapplicable here. "[T]he harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). But "'[w]here plaintiff has actual notice of all the information in the movan's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Plaintiff not only had notice of these documents but inescapably relied on them in bringing its Amended Complaint.

[5]   The original Complaint, the Amended Complaint, and a Redline of the two pleadings are attached as Exs. 1–3, respectively, to the Supplemental Declaration of Adam H. Offenhartz, dated April 5, 2013. Plaintiff's Opposition speculates that a party must attach the operative complaint to a motion to dismiss or face a denial of its motion. Of course Plaintiff cites to no authority for this proposition, because the law is to the contrary. *See, e.g.*, *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (Court takes not only complaint into consideration on motion to dismiss, but also documents incorporated by reference or integral to complaint, even when not attached to motion (citing *Cortec*, 949 F.2d at 47–48)).

[6]   Compl. ¶¶ 1, 20, 23, 25–27, 29, 33, 43, 46, 96, 105–06, 109, 114.

[7]   AC ¶¶ 27 ("the parties signed a term sheet in July 2011"), 28 ("In October 2011, plaintiff and Altobridge [entered] a modified term sheet"), 39, 44, 53, 124, 131, 134, 137, 142–43, Prayer for Relief at (viii).

[8]   *See Louis Vuitton*, 868 F. Supp. 2d at 176 (references to use of "knock-off" Louis Vuitton travel bag in film were sufficient for court to consider film on motion to dismiss); *In re 50 Pine Co., LLC*, 317 B.R. 276, 284 (Bankr. S.D.N.Y. 2004) (considering and relying on Term Sheet in granting defendant's motion to dismiss).

Proposed Investment at the core of Plaintiff's lawsuit. The Amended Complaint challenges the same acts as the original Complaint with the same theories. There are only two differences: (i) Plaintiff removed some formal references to the Term Sheets in a vain attempt to escape their preclusive effect, and (ii) Plaintiff added several claims, including its Eighth Cause of Action for specific performance *of the October Term Sheet*. AC ¶¶ 130–37. Despite Plaintiff's best efforts, including artfully amending its pleading, the Term Sheets should be considered on this motion to dismiss because they are integral to Plaintiff's pleadings.[9]

## B.   Plaintiff Failed to Plead Required Elements of a Joint Venture

In the face of the Term Sheets, Plaintiff is simply unable to plead the first two elements of a joint venture, requiring a specific agreement and an intent to be bound. Plaintiff's Amended Complaint conclusorily asserts, without any factual support, that a joint venture was formed by oral agreement in December 2011, and Plaintiff's Opposition echoes this conclusion and further argues that the Term Sheets somehow demonstrate such an agreement existed. However, *in direct contradiction of Plaintiff's unsupported conclusory pleadings*, the Term Sheets expressly disavow the existence of any definitive agreement or any intent to be bound. *See* **Ex. 2** (Oct. Term Sheet "intended to reflect the general business terms of a potential agreement between the Parties" and not a "definitive final agreement"). This defeats Plaintiff's conclusory allegations of any agreement as well as any intent to be bound.[10] *See, e.g.*, *CAC Grp., Inc. v. Maxim Grp.,*

---

[9]   *See, e.g.*, *Yung v. Lee*, 432 F.3d 142, 145 (2d Cir. 2005) (relying on letter agreements in affirming dismissal of Plaintiffs' fraud claim).

[10]   Plaintiff places extensive reliance on a readily distinguishable decision by the First Department. Opp. Br. at 16–19 (discussing *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 291, 765 N.Y.S.2d 575 (2003)). In *Richbell*, at the outset of the parties' negotiations, the Plaintiff drafted a memo memorializing in writing the terms of the parties' agreement. That initial writing *drafted by the plaintiff* did not contain any statement of an agreement not to agree. Subsequently, the *Defendant drafted* and sent to Plaintiff several term sheets that styled the parties' agreement as "proposed," "non-binding," and contingent upon a "definitive agreement." Because *the Defendant* made the changes without Plaintiff's assent, the First Department denied the motion to dismiss on Plaintiff's claim of a joint venture. In contrast, in this action, there is a critical distinguishing fact that Plaintiff conveniently ignores: here there is no dispute regarding assent. In fact, it was

*LLC*, No. 12 Civ. 5901 (KBF), 2012 WL 4857518, at *3 (S.D.N.Y. Oct. 10, 2012) ("'if parties

do not intend to be bound by an agreement until it is in writing and signed, then there is no

contract until that event occurs'" (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69,

74 (2d Cir. 1984))).[11]

The Term Sheets similarly dispel the existence of the last two elements of a joint venture,

which *require* joint control and a definitive sharing of profits *and* losses.  Under the Term

Sheets, joint control was a possibility, but was not *required*.  *See* Opening Br. at 12–13 (detailing

that the Term Sheets (i) articulate the use of a corporate entity, (ii) that is governed by a board of

directors, (iii) mandates that one director must be an "Altobridge Representative," and (iv)

makes no such explicit requirement that any director be a representative of Plaintiff).  The

sharing of profits and losses was likewise a possibility, but again not *required*.  *See* Opening Br.

at 13–14 (detailing that the Term Sheets provide only for Plaintiff's purchase of "capital" and

"shares" in a corporate entity, an arrangement that does not suffice to plead a definitive

agreement to share profits and losses); *see also Zeising v. Kelly*, 152 F. Supp. 2d 335, 349

(S.D.N.Y. 2001) (allegations that Plaintiff was to receive percentage of entity's stock insufficient

to provide for sharing of profits and losses, and thus no joint venture existed).

In light of the Term Sheets, Plaintiff cannot plead four of the five essential elements of a

joint venture.  Each of these failures suffices to independently establish that no joint venture

---

not the Altobridge Defendants, but *Plaintiff's assignee* that drafted the Term Sheets on the assignee's letterhead.
Plaintiff's desperate attempt to distance itself from the Term Sheets by questioning their authenticity is belied
by the signature of Plaintiff's assignee on the July Term Sheet.  **Ex. 1**.  Furthermore, Plaintiff should not be
permitted to use the Term Sheets as a sword, relying on them in its pleadings, and at the same time use them as
a shield, questioning their authenticity and asking this Court to ignore them.

[11]   Plaintiff attempts to characterize these cases as "inapposite," Opp. Br. at 21 n.11, because they address intent in
the context of contract claims.  However, this does not affect their applicability to the issue of consent here.
These cases stand for a fully applicable and uncontested proposition of law:  "[i]t is well settled that, if the
parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both
of them, they are not bound and may not be held liable until it has been written out and signed."  *Scheck v.
Francis*, 26 N.Y.2d 466, 469–70, 260 N.E.2d 493, 494 (1970).

existed. The absence of a joint venture defeats Plaintiff's claims premised on breach of a

fiduciary duty or aiding and abetting such a breach.

## C. Plaintiff Failed to Plead Fraud with *Any* Specificity or Scienter Absent Hindsight, and Plaintiff Cannot Plead Reasonable Reliance or Legally Cognizable Damage

Plaintiff's Amended Complaint fails to allege any of the four elements of a claim for

fraud and each of these failures is an independent ground for dismissal.  Plaintiff's Opposition

belies its inability to identify *any* fraudulent statement by Intel, much less its ability to do so *with*

*specificity*.  As Plaintiff's Opposition makes clear, Opp. Br. at 36, the Amended Complaint does

not (i) specify any Intel statement, only a purported Altobridge statement; (ii) it does not specify

any Intel speaker, only an Altobridge speaker; (iii) it does not specify when any Intel statement

was made, only when a purported Altobridge statement was made; and (iv) since it does not

identify any Intel statement, it of course cannot explain how such an (unplead) statement could

be fraudulent.[12]  *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  This failure alone

warrants dismissal.  *See, e.g.*, *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir.

2009) (failure to identify misrepresentation is fatal to claim on motion to dismiss).

Plaintiff's arguments in its Opposition regarding third party representations do nothing to

salvage the Amended Complaint's inadequacies.  Plaintiff *must* plead facts demonstrating both

(i) reliance on the third party representation, *and* (ii) "that defendant intended that the

misrepresentation would be relayed to the plaintiff."  *Evercrete Corp. v. H-Cap Ltd.*, 429 F.

Supp. 2d 612, 628 (S.D.N.Y. 2006).  Plaintiff nowhere alleges in the Amended Complaint that

Intel intended that any of the statements it made to the Altobridge Defendants be communicated

to Plaintiff.  This pleading failure is fatal to Plaintiff's claim.  *Id.* (Where "plaintiffs do not allege

---

[12]   Of course, even the Altobridge-specific allegations of fraud fall woefully short of Rule 9(b) pleading requirements.  Moreover, the fraud claim against Altobridge suffers from the same inability as the claim against Intel to plead (i) reasonable reliance, and (ii) scienter *at the time of the representation*.

that defendants had any such intent," "plaintiffs' common law fraud claim [will be] dismissed.");

*see also Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F. Supp. 1252, 1261 (S.D.N.Y. 1988)

(failure to allege that "Chase intended" that purported misrepresentation be communicated to a

third party warranted dismissal of fraud claim premised on third party representation).

Plaintiff's assertions of reasonable reliance fail for many of the same reasons its joint

venture claim fails.  Both Term Sheets expressly disclosed that the parties' anticipated

transaction was "proposed," "non-binding," "potential," and contingent on "the signing of a final

definitive agreement."  Given that both Term Sheets post-date the purported March 2011

representation by approximately nine months, Plaintiff simply cannot demonstrate it was

"justified in believing the [March 2011] representation and that [it] was justified in acting upon

it."  *Allison v. Roundtable Inv. Mgmt. Co., LP*, 447 F. App'x 274, 275 (2d Cir. 2012) (dismissing

fraud claim for lack of reasonable reliance).

Plaintiff cannot adequately allege scienter by pointing to a December 2011 refusal to go

forward with a potential transaction as the sole evidence of fraudulent intent behind a purported

representation to consider the transaction made months earlier in March 2011.  The law is well-

settled that "[a] complaint alleging fraud based on a statement of future intention must allege

facts sufficient to show that the promisor, at the time the representation was made, never

intended to honor the promise."  *Pope v. N.Y. Prop. Ins. Underwriting Ass'n*, 66 N.Y.2d 857,

859, 489 N.E.2d 247 (1985); *see also Capricorn Investors III, L.P. v. CoolBrands Int'l, Inc.*, 66

A.D.3d 409, 886 N.Y.S.2d 158 (1st Dep't 2009) (affirming dismissal because "plaintiff alleges

no facts that would show that defendants never intended to keep their promises").

Plaintiff's Opposition concludes, without citing any cases, that Plaintiff plead fraud

damages.  But according to Plaintiff's own October Term Sheet, it agreed to forgo all "legal and

advisory costs prior to Closing." Plaintiff's Opposition concedes that its claim for fraud seeks to recover only the pre-closing legal and advisory costs it expressly disclaimed. Opp. Br. at 43–44 (citing AC ¶¶ 92–93). Given that fraud claims only permit recovery for "loss sustained *as the direct result of the wrong*,"[13] and Plaintiff never expected any recovery of its pre-deal costs, Plaintiff fails to identify any damages it suffered *because of the purported representation*.

Plaintiff's Amended Complaint should be dismissed with prejudice because it fails to plead all four elements of fraud, each of which provides an independent ground for dismissal.

**D.    Plaintiff Pleads Only Conclusory Allegations And Identifies No Facts That Could Be Construed As Tortious Interference**

As Plaintiff's Opposition acknowledges, a claim for tortious interference requires pleading that (i) defendant acted solely out of malice, or (ii) defendant engaged in activity that amounts to criminal behavior or an independent tort. Opp. Br. at 45.

Plaintiff fails to plead that Intel acted out of malice. According to the amended Complaint, Intel interfered because the grant of an exclusive license of "future [Altobridge IP] developments" would "make difficult the unencumbered sale of [Intel's investment in Altobridge]." AC ¶¶ 38–39. This allegation that Intel's action was prompted by economic self-interest defeats, as a matter of law, Plaintiff's assertion of tortious interference based on malice, *i.e.*, the first prong.[14] To dodge this plain bar to its claim, Plaintiff proffers a confusing and unavailing argument. Plaintiff appears to assert that because Intel purportedly approved the proposed investment deal in March 2011, such approval somehow made the deal definitively profitable from Intel's investment perspective nine months later when it purportedly "pressured"

---

[13]    *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 27, 901 N.Y.S.2d 246, 249 (1st Dep't 2010) (quoting *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370 (1996) (emphasis added)).

[14]    The law is clear: "[a] motive of 'normal economic self-interest' is inconsistent with a sole purpose of inflicting intentional harm." *Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 432 (S.D.N.Y. 2007); *see also Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895, 2007 WL 39301, at *19, n. 19 (S.D.N.Y. Jan. 8, 2007) ("[E]vidence of self-interest serves to rebut any allegations of malice.").

Altobridge to refrain from finalizing the proposed investment. Plaintiff nowhere explains or provides allegations of fact demonstrating why avoiding an impairment in the value of Intel's investment was not in Intel's "normal economic self-interest."

Plaintiff also fails to satisfy the second prong, which requires allegations that defendant engaged in criminal or tortious conduct directed *not at the Plaintiff* but at the third party. *See, e.g. Valley Lane Indus. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F. App'x 102, 107 (2d Cir. 2012) (affirming dismissal of claim identifying only conduct targeted at plaintiff, because "conduct constituting tortious interference with business relations is, by definition, conduct directed *not at plaintiff itself*, but at the party with which the plaintiff has or seeks to have a relationship"). The Amended Complaint nowhere mentions any tortious action by Intel *directed at the Altobridge Defendants.* This defeats Plaintiff's claim.[15]

## CONCLUSION

For the forgoing reasons, Intel respectfully requests this Court dismiss the Amended Complaint with prejudice and grant such other relief as this Court deems just and proper.

Dated:   New York, New York
         April 5, 2013

GIBSON, DUNN & CRUTCHER LLP

By: _____
    Adam H. Offenhartz

200 Park Avenue
New York, NY  10166-0193
Telephone:   212.351.4000
Facsimile:   212.351.4035

*Attorneys for Defendant Intel Corporation*

---

[15] *See, e.g., G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (affirming dismissal of claim because alleged conduct was directed not at the third party, but at plaintiff).